Good morning, Your Honors. My name is Jennifer Levin-Eikhorn. On behalf of the United States, I'm here with Mr. Tim Durkin and Mr. Victor Boutros. We request to divide arguments such that Mr. Durkin can provide rebuttal and reserve five minutes. This case presents a narrow question of whether evidence should be submitted under Rule 403, and I'd like to highlight a few of the most significant reasons why this Court should reverse the District Court's decision, beginning with the 1519 obstruction of justice charge. First, the District Court did not fully and independently assess the admissibility of the evidence for the issue of obstruction, and as a result, it has excluded evidence that the government proffered to prove an element of its case. This Court's discussion, which is limited to a footnote in the record at page 15, suggests but does not find, as it should, that this evidence is independently admissible for 1519. As I gather, the point that the District Court was making was that the officer had no knowledge of what was in Thompson's, not Thompson, but his pockets, and that, therefore, it was unfair to allow that evidence to come in. He thought that the evidence that could be considered was the phone call that said that he'd been messing around at the ATM, and that he then went on into the convenience store, and that he was menacing by taking this bottle and holding it out, and that it was just simply unfair to allow the evidence in the individual's pockets that would have bolstered his claim of innocence. Yes, there are several points I'd like to respond to, Your Honor. First, it's not simply what was in his pockets. It's the mere fact that Mr. Zem did not take money from Ms. Smith's account at the ATM is relevant for purposes of showing that Mr. Thompson's description of Mr. Zem's behavior, when what she says is a justification for his initial stripes, is a false statement. We're saying because he had not committed a crime, and he was not aware of Mr. Thompson's presence in the store, his entire description, which is in the record at pages 466 to 470, where he goes on with an elaborate description of Zem's purported appearance and his purported ambush, is less likely to have happened, which is why we've proffered this, to show and to contradict and to show that he's made a false statement. Here's my confusion. You spent a lot of time arguing that it was relevant, but the district court said it was relevant. I mean, there's no dispute. It's relevant. It was probative, obviously very helpful to your case. What the district court said was it's too inflammatory. It's prejudicial. And one argument you make is, well, but it's crucial to our case. But yet you also say, well, there were witnesses. There was the video camera. They're just not as good. But help me understand why this evidence, in addition to being relevant and probative and helpful, is crucial to your case. For purposes of 1519, the government needs to show that there's a false statement. So in our case in chief, we will be presenting Mr. Thompson's statement to Detective Ferguson, and it's our obligation to show how it is a false statement. So to show that Mr. Zim did not take this money makes his description that he turned to Mr. Thompson with a bottle in a horizontal position with elbows locked at his side, one foot in front of the other, with direct eye contact showing no confusion, absolutely defiant and deliberate. We're contesting all that is a false statement. At the time he made his statement, if I can just say, Your Honor, he knew that Mr. Zim had not committed a crime, and, frankly, he knew that he was dead. So the fact that this may be after acquired knowledge, if you want to use that summary phrase, for purposes of 242, does not come into play for 1519. The court did not make an independent assessment that this should be admitted for purposes of 1519 standing alone, and that, we say, is one reason why the court abused its discretion. Under some of your cases, we could also say under de novo review, that's equally error. Now, with respect to the other evidence, the government, first of all, as you know, has a choice to prove its case as it wishes. Because of these specific descriptions that Mr. Thompson has made, the direct eye contact, the defiant look, his lips were set, his muscles were tensed, there are no other witnesses that have that kind of proximity in order to contest that description that Mr. Thompson has given, so that the evidence that he is innocent is critical to our showing that that description, that entire description, are false statements. Counsel, let's assume for the moment that your client was not innocent. The fact that Thompson just beat him to death, isn't that enough to convict Thompson? We'd like to think so, Your Honor. But, again, the fact that we have the video, he's contesting, I'm sorry, but he is asserting that he had a right to use that force because of Zem's initial ambush. Of course, we have a completely different theory of the case. The fact that there are 13 baton strikes and seven occur within seven seconds, and that Zem is on the floor within the first four seconds, of course the government would like to submit that all of that is enough to show a use of excessive force, and that he had no reason to raise his baton and make those first two strikes. But his theory... His guy was brain dead by the time they took him to the... That's true. All these are very unfortunate circumstances, and, of course, that's, you know, the government will present the video. The problem is, as a surveillance tape, it doesn't have the same quality as a movie you're going to see in the theater or in video. Let me ask you this. You know, this is an unusual case because here the district court said evidence that would be harmful to the defendant needs to be excluded. It's too prejudicial. Right. In my quick survey, I couldn't find another case where we had held that the district court abused its discretion under Hinkson, which is very broad, in a case where the evidence that was excluded was harmful to the defendant. Is there a case that you can point me to? So we'd have to say that the district court abused its discretion in refusing to allow in evidence that the district court's judgment was prejudicial, inflammatory to the defendant. Is there another case like that where we've held that? No. I mean, frankly, there's going to be very few cases. There are very few cases where there are reversals. I mean, I think for the most part the district courts understand Rule 403 is to be read in favor of admissibility, and they get the balancing right. There are a handful of cases where this court has recognized where the district court's failure to recognize the full probative value constitutes an abuse of discretion. Does it make a difference if this is a pretrial ruling? In terms of whether or not this court has the authority to regress? In terms of how he exercises discretion. I think his commentary with respect to this being cumulative is significantly premature in terms of, first of all, he got it wrong in two respects. First, he says they're adequate means. That's not the standard under 403 is whether or not it's needlessly cumulative. And the fact that we have, that there is this video, which, again, provides limited observation of all the movements. It shows when they're standing, it shows from shoulder and above, and not when they're completely on the floor and have all the strikes. The judge, as I read his order, he said that as the events unfold at trial, he might be willing to reconsider. We don't think that's enough. We think this court certainly has authority. I'm not talking about our jurisdiction. I'm just talking about for practical purposes. For practical purposes. It's very difficult to make a pretrial ruling like this. And I was kind of surprised that a judge would do something like this because it needs to come out. You can't really get the full flavor of something like this until the evidence is really presented. That's correct. So you see how people testify and what goes on, what they say, observations. That's correct. And he left himself an out. But I don't think that's enough, Your Honor. The United States has offered this evidence to prove its case in chief for both counts. It's essential for 1519 for the government to introduce a statement and why it is false. Well, if he testifies, the judge might rethink his position. But that's an if, if he testifies. But the thing is, we also use it to prove the element of willfulness for a case in chief. So he's made a determination that evidence that the government has proffered for its case in chief cannot come in. And the court is being asked to make this determination based on the record that it has before it. If the court says, well, I can revisit this, Well, certainly that's the court's obligation under Supreme Court precedent to see how things unfold. But simply to wait to see if there's going to be any opportunity for rebuttal is essentially too late when the government has the obligation to carry its burden, obviously a significant one. But, Your Honor, I don't understand your argument to be that you can't prove your case without it. Is that your argument? Is that what you're really telling us? No. We're saying it's a significant piece that hinders our ability to prove it. We have to say, this seems to me under Hinkson, we would have to say the district court said relevant and probative, but too prejudicial, inflammatory, and you have other means. And we would have to say that's illogical, implausible, and without support in the record. Right. And I can say one reason why it's illogical is because of its inconsistent ruling that permits the court Goodness, I'm seeing my time. I'm significantly using up my four minutes rebuttal. I'll give you time. Thank you. It's an important case. Thank you. It's illogical because of the court's ruling during the hearings that preceded this written opinion when the court said, I will let the defendant introduce evidence of Zim's post-assault conduct in order to corroborate Mr. Thompson's version of the events. That evidence can only come in if it has virtually the same limiting instruction that would happen with respect to the government's evidence that Zim committed no crime. They're wholly, it's wholly inconsistent, and therefore that portion of it's illogical. Now, I would also submit that there isn't a basis, there's a question, you can argue whether there's no basis in the record. The court is primarily, if not exclusively, focusing on, indeed he finds that there's probative value, but there are a couple of statements in his opinion where he says, it's evidence of innocence for the general concept that he did not resist. We're offering it for a far more specific and important reason. It's evidence that Zim committed no crime to refute the veracity of Thompson's statement that he acted in an aggressive way and engaged in an ambush, which gave Thompson his justification for the initial strikes. They're two significantly different things, and because of that, the court did not give the full probative value. This court's reversed in McFall and in Blalock and in Crosby when the court failed to give, when the district court failed to recognize the probative value of evidence to prove a defendant's case. So when you were asking is there a case in this court of a defendant and Blalock, Blalock was being charged with possession, felon possession of a gun, and the cop had asserted that he was out running. And Blalock was barred from introducing medical evidence that would show he had an injury and was not capable of running so that it would have supported his version, contradicted the officer's version. Did you raise this 1519 issue in your opening brief? I remember seeing it in the gray brief, but maybe just point me to where it was in the blue brief. Pages 21, 28, 29, 37, and 45. Okay. Why don't you save the rest of your time and I'll have some more time for you. Thank you very much, Your Honor. For your associate. If Your Honors, please, Carl Oreskevich for the defendant Thompson. First, let me just clarify a comment made by counsel. Counsel had just made the argument to you that the evidence of innocence undermines Thompson's defense of ambush. We have provided to the court Officer Thompson's statement, a great many of the pleadings that were filed, and nowhere, nowhere is there any statement by Officer Thompson that he thought he was going to be ambushed. That's the government's characterization of it, and I don't want the court left with the notion that the officers left that. I think the court, I think from the statements or the questions that have been raised, we truly are dealing with an abusive discretion standard. I think you should be aware of the fact that this was a hotly contested case, a case where the docket shows that there were over 470-some pleadings. There were 70 pretrial motions, and there were 30 motions in limine filed by the respective side where both of us used Boyd and what was known to the officer, or what was not known to the officer to try to accomplish our respective rulings on our motions. One of the things that strikes me as we go through this, it is an appropriate analysis by the district court in terms of analyzing Rule 403 to look at a number of different factors to make a determination as to whether probative value is substantially outweighed by prejudicial value. At the district court level, and then again in our briefs, I have raised this. I have taken issue, candidly, with Judge Van Sickles' finding that the evidence of innocence is really probative, and he noted that in his order. And the argument with that, in my mind, is it may very well be that a person that is innocent acts peacefully. That could happen. It could also happen that a person that is innocent acts defiantly. Why are you stopping me? I've done nothing. It could very well be that a guilty person acts defiantly. It may very well be that a guilty person just gives up and says, I'm caught, I'm going. Can I direct your attention to the Count 2, Issue 1509, where the government says, look, this is more important in this case. Maybe it's not crucial, but it's much closer to being key to proving our case on that count. And here we know the district court could have some doubts. It had the footnote. It said, well, maybe it would be admissible, but I'm concerned it will bleed over into the Count 1. But the district court could have simply given a jury instruction, which we presume the jurors will follow. The district court said, well, I'm not so sure in this case. It's so inflammatory. Why isn't that a mistake if we assume that the 1509 evidence is that important? It's not a mistake because it still is an abuse of discretion standards, Your Honor, in terms of whether the district court, in analyzing the efficiency, the adequacy, the effect of a jury instruction, it's within the discretion of the trial court to give that instruction. And it still is an issue as to an abuse of discretion as to whether or not the trial court, in ruling, I can give a limit. So we presume that a jury is capable and will follow our instructions. I agree. I agree that that's the status. That's the statement he said. He said, well, you know, I don't think the jury is capable of doing that. Well, in the real world, you know, from my old days as a district judge, I mean, we used to give these admonishments all the time. But practically speaking, we tell ourselves, oh, they're probably not going to admonish. You know, they're not going to follow that. They're going to do whatever they want to do. But realistically, from where we sit now, we have to assume that the jury is going to follow the instruction. And that's not what the judge did. I agree that it is exactly not what the judge did. And I don't think it was just a spurious decision that was made by the district court not to apply a limiting instruction. The issue, in part, it strikes me, is that we all know from the Graham v. Conner analysis, the inquiry is based upon the officer's use of force is based upon what's known to him at the time. The reasonableness of his use of force is based upon what's known to him at the time. What the district court talked about, both in count one and then later as it related to count two, although it's not given as much wording in his opinion, is that the fact of Mr. Zim's innocence, unknown to Officer Thompson, was going to create, one, an issue of confusion, of diversion, is the way the district court characterized it as it related to count one. And then, two, it was going to substantially prejudice Officer Thompson because a jury was going to then ask the question, well, wait a minute, we know that Officer Thompson had two sources of information. He had information that came to him from the radio dispatch and a report on a computer, a CAD report on a computer within his car. Those were the two sources of information that he had, that Otto Zim had taken money from an ATM, that he had run from the scene, that the girls were frightened, that he appeared to be high on something. Now, in making a determination under count 242, the jury has to decide what are the facts and circumstances known to that officer at the time. Letting them know that Zim was innocent is going to cause them to second guess, well, what's the urgency? That's what the district court said. Why is it that you have to stop him? What's the urgency that this could occur? Now, as we get to count two, I recognize the court's question. We give limiting instructions. And the lie is, juries are presumed to follow limiting instructions. I mean, we all recognize that to be the status of the law in this and other jurisdictions. But the court looked at that and said, how is it that a jury is going to be able to compartmentalize the instruction and say, all right, we can tell you. We do it all the time. Judge. We do it all the time. You know that. You're a trial lawyer. You know what judges do. They give limiting instructions all the time. Ladies and gentlemen, you're not supposed to consider this evidence for X purpose and no other purpose. And we assume that they're going to do that. We assume, right? Right. And I am a trial lawyer, and you're right about that. And judges give limiting instructions all the time, all the time. And it is not always that juries follow limiting instructions. They may be given all the time, Your Honor. I don't disagree with that. But as I thought in terms of preparing for this argument, what is the limiting instruction? How do you draft the limiting instruction in such a way that Officer Thompson's trial will be fair, that it won't be tainted? And there isn't a way. Judge Van Sickle looked at that, and he said, look, even with a carefully crafted instruction, it is unrealistic. How do you get around Boyd, really? When I read Boyd, I couldn't quite figure out how the judge did what he did here. Well, Boyd did exactly the same thing. Boyd went through exactly the same analysis. The Boyd language, when we read Boyd, there were a number of different types of evidence that were admitted in Boyd, and then at the Court of Appeals, the certain evidence was reversed because it was under Rule 403. Boyd does a couple of things. Unlike here, Boyd has scientific forensic evidence that tied into circumstances that had opinion evidence that tied together various actions that Mr. Cameron Boyd had engaged in in the two or three days leading up to this event so that there was opinion evidence on a more probable than not basis, on the basis of forensic science, that it was suicide by cop. We're saying innocence. What does innocence mean? The state doesn't or the government doesn't have forensic evidence, scientific evidence, evidence of any nature that says an innocent person will act a certain way. So that's one issue around Boyd. Second issue around Boyd is Boyd had, there were some factual disputes in Boyd. When the officers confronted Boyd just before the shooting, they told Boyd to get down. Put your hands up, get down on the ground. And apparently there was disputed testimony as to whether or not Boyd was moving quickly or not. When the plaintiffs sued, they said Boyd was a 1983 action. Well, he couldn't get on the ground because he had prosthetic legs. The district court in Boyd, in addition to the forensic evidence of suicide by cop, said, wait a minute, two days later when Boyd was stopped, he was able to very quickly get on the ground. So it's direct impeachment testimony. Boyd is there. I mean, there's no question that Boyd is there. Let me ask you this about Boyd, and also it's the question I ask the government as well. In Boyd, we upheld the district court's determination. Is there a case that you're aware of where we've reversed a district court's 403 balancing to allow in evidence that was harmful to the defendant? Because, as I said, my preliminary review, I didn't find a case. Not that I'm aware of, Judge. In Boyd, a civil case, the one category of evidence that was reversed on was against the plaintiff as opposed to the defendant. It dealt with some rap lyrics that promulgated prostitution that were allowed in in the district court. And the Ninth Circuit in Boyd said, after it had gone through all the 401, 403 analysis on the other pieces of evidence, said it was error to allow this piece of evidence to come in. But in direct answer to your question, I don't have one. Okay. One of the things that strikes me, and one of the questions that was asked by the court, was what about all this other evidence? And there is tons of it. We're not talking simply about a video camera. There is a video camera, four different angles, albeit it has some grainy video, and it doesn't show every single interaction between Carl Thompson and Otto Zimm. But there also are six or seven percipient witnesses who observed the action between Mr. Thompson and Otto Zimm. There are medical witnesses that the government has identified as expert witnesses. One of the challenges, one of the charges in this case, is that Mr. Thompson's use of force was unreasonable. And it was unreasonable because he used deadly force. Deadly force not in the sense of a handgun or a shooting, but deadly force in terms of a use of force continuum where a baton strike to the head is considered to be deadly force. Thompson, in his statement, says, I didn't intentionally do that. The government has neuroradiologists. The government has the forensic examiner for the Spokane County. It has a number of expert witnesses who will talk about the location and cause of the baton strikes. It has an animator who has recreated the video. It has a human factors expert to analyze whether or not Thompson's description is consistent with human factors study. So when the district court is part of its 403 balancing, which it's required to do and which the advisory committee notes say to do, looked at other evidence, there is an absolute abundance of other evidence. One of the things that strikes me about this, and perhaps you disagree, the district court disagreed with me, the fact that someone is guilty, we know this from law, doesn't make an unreasonable use of force reasonable by the fact that they're guilty, nor does the fact that someone is innocent turn a reasonable use of force into an unreasonable use of force. And when we look at this notion of innocence, in my view, different than what Judge Van Sickle found, I think it is just flat irrelevant, in my view. I don't think it proves anything one way or the other, and it certainly doesn't come in under the Connor analysis as we have understood Connor to be. When this individual said, all I wanted was a Snickers, is that going to come in? What the district court did, we had some motions in Limney, that comment was made at the end. And so the court understands Mr. Thompson's initial confrontation with Otto Zim, where there's just the two of them, is roughly 35 or 40 seconds. Thompson is joined then by a second officer, Officer Steve Braun, and they are tussling for a lack of struggling, I guess is maybe a better word to say this, for about an additional minute, until four other officers arrive on the scene, and then the six of them are able to restrain Mr. Zim. My question was rather simple. Okay. Is that statement coming in? The court reserved ruling on it? That's all you have to say. Okay. Let me address the issue of inconsistent rulings, because that's what the government raised here a moment ago. When the four officers came, there was a struggle that continued between the four of them, the six of them actually, and Mr. Zim. And it continued for some period of time. He was restrained. He was double restrained. And after about 17 minutes, his heart stopped. Now what the court said, Judge Van Sickle said, is, wait a minute, I can't draw a bright line here. I'll shorten this quickly. Go ahead. I can't draw a bright line here and say as to how much of this I'm going to allow. It's a continuation of a struggle, and I'm going to allow those percipient witnesses who see the continuation of the struggle in a near proximity of time, that's what I'm going to allow as I see the trial unfold. It becomes relevant, Your Honors, for a very particularized reason. As I said, there are issues related to the nature and the extent of the injury, the nature and extent of the baton strikes. In this 17 minutes, during the time where Mr. Zim was restrained and unrestrained, there's a lot of struggling that potentially causes the injuries, the marks for which the government is accusing Mr. Thompson. So it is not an inconsistent ruling based upon bullying. Okay. Thank you. Thank you. Rebuttal, Mr. Durkin. Thank you, Your Honor. May it please the Court. I'm going to address quickly several of the points that were raised by Mr. Rescovich. One, ambush. He did not use the term ambush, but his description contained in the record at 289 to 315, as well as 464 to 469, specifically attributes knowledge, intent, motive, and a sinister prospect of Mr. Zim. Seeing the officer as he's coming in, grabbing the pop bottle, lying in wait, turning towards him with an aggressive stance, and he describes Otto Zim as being completely defiant. And the term he used further in that regard is resolute, ready to attack him. Otto Zim's innocence completely contradicts that. It goes directly to the heart of that ambush description. With regard to the trial court's limitation, indicating that it would be willing to revisit the ruling during the course of the trial, the United States submits that that's illusory, because presumably the court's ruling was based on Officer Thompson's statement. So he's already got his statement. So if he is called to trial, which the United States submits, he may or may not be. And assuming if we get through defense motions at the end of our case, and assuming that we get to a rebuttal, the United States submits it's still not coming in, because the courts already reviewed what the United States anticipates would be Mr. Thompson's testimony. In terms of the limiting instruction, as Your Honor has pointed out, they're given all the time. And the law provides to assume that they are followed. And the prejudice here cannot be any worse than the prejudice that the court found in Boyd two nights before when the plaintiff in that case threatened to rape, at gunpoint, two female women. That testimony came in. Now, Mr. Rescovich is attempting to distinguish Boyd. Of course, he wants to do that to more narrowly tailor it to just the instances where it's suicide by cop. But that's clearly not what the court did in Boyd. But there we upheld the district court. I mean, that's what concerns me. I mean, we're upholding the district court's ruling. Our standard and our deference to the district court is pretty broad. So in order to reverse the district court, we have to find some sort of error that's beyond just, well, we would uphold it if he had gone the other way. I mean, if the district court had allowed the government to introduce that evidence and the defendant challenged that, you know, which they can't, but if they could, that would be a different case. You're right, Your Honor. And we pointed out to you in the briefing, and we see United States Submit has done so here, a number of bases for reversing the court under the standard that was more recently set forth in Hink's 2008 decision. I know you participated in it. And that is, one, it did not properly, the court did not properly understand the argument. It did not properly understand. And, in fact, dealt with the 1519 charge in a footnote. That was a complete failure to understand what the evidence and the appropriateness of that evidence. It relied on facts that were not the facts that the United States submitted. So it got the facts wrong. Do we have a case that says it's an error for the district court to consider the bleeding over of evidence? That's what the district court was saying. Look, you might have a stronger argument on 1509, but I'm so concerned about it bleeding over. I'm going to, at least for present purposes, say it's inadmissible for that as well. Do we have any case on that where we've considered that sort of argument? You know, we thought about that when we were preparing the appeal and analyzing that. And the answer to that is no, that we could find. Now, what we compare it to is under the old chief decision, when you've got a felon in possession and he raises the issue and says, okay, I'm going to stipulate to the felony. And there are other charges connected to the felon in possession charge, drug charges. Then there is a spillover effect. In those circumstances, the court has found that is way too prejudicial. The United States submits that that's not what we have here. In limiting instruction, we have one prepared. The evidence that Autozan did not take any money from Ms. Smith's account may be considered in your determination of the totality of circumstances, that is, what happened immediately before and during Thompson's confrontation with Zim, and whether Thompson made false statements about Zim's actions during his interview with the detective. You must consider this evidence only for your determination of what occurred and whether Officer Thompson made any false statements. Unless you have any further questions, I'll sit down. Thank you. Thank you. We appreciate your arguments. The matter will be submitted at this time.
judges: Fletcher B. , Paez, Ikuta